T.C. Memo. 1997-173


UNITED STATES TAX COURT


MAUDELLA L. CASKEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10864-95.                    Filed April 7, 1997.


Maudella L. Caskey, pro se.

<u>Michael D. Zima</u>, for respondent.


MEMORANDUM OPINION


WRIGHT, <u>Judge</u>:  This matter is before the Court on

respondent's motion for summary judgment pursuant to Rule 121.[1]

In the motion, respondent contends that the Court should sustain

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

the income tax deficiency and penalty determined in the notice of deficiency because this case contains no genuine issue as to any material fact and that judgment should be rendered as a matter of law.

Background

Respondent determined a deficiency in petitioner's Federal income tax for taxable year 1991 in the amount of $29,027. Respondent further determined that petitioner is liable for the accuracy-related penalty under section 6662(a) in the amount of $5,805. A notice of deficiency was issued on March 17, 1995.

On September 27, 1996, petitioner filed a motion for continuance (petitioner's motion), requesting that this case be continued due to a surgical operation performed on her knee. According to her motion, petitioner's physical condition following said surgical operation prevented her from traveling to Tampa, Florida, for the trial in this case. On September 30, 1996, before the Court had ruled on petitioner's motion, this case was called for trial at Tampa, Florida. Neither petitioner nor anyone acting on her behalf made an appearance. Counsel for respondent, however, appeared and was heard. Despite petitioner's absence at the calender call, the Court considered and granted her motion for continuance.

On November 13, 1996, respondent filed her above-referenced motion for summary judgment (respondent's motion). On November 15, 1996, the Court ordered (the Court's order) petitioner to

show cause in writing on or before December 23, 1996, why respondent's motion should not be granted. As of March 8, 1997, petitioner has not responded to the Court's order.

On March 7, 1994, petitioner entered a plea of no contest in the Circuit Court of the Twentieth Judicial Circuit, located in Charlotte County, Florida, case number 93-203-CF, to the charge of first degree grand theft.[2] This conviction stems from

---

[2]The transcript of petitioner's criminal proceeding contains the following colloquy:

THE COURT: Would the State summarize the facts, please.

MS. HARRINGTON: Between the 23rd of February of 1990 and August 25th of 1992, this Defendant was doing business as Property Management Services. Under that corporation, they had a contract to oversee greenbelt Maintenance in five sections of Punta Gorda Isles; Sections 16, 18, 20 and 23. Maintenance was to be paid for through fees assessed by the Association on each of these sections.

Under this contract, the Defendant's responsibility was to accept bids and submit recommendations for payment to Punta Gorda Isles when the work was completed. [The Defendant] was fully paid on a monthly basis for the services under the contract by each of the five Property Owners Associations.

The investigation conducted by the Charlotte County Sheriff's Office revealed that the contractors performed the necessary work and then submitted these invoices to [the Defendant]. After receipt of the invoices, she would duplicate the invoices, changing the amount due on the form. The duplicated invoices were then being submitted to the Home Owners Association with a letter recommending payment. The invoices were paid by checks from the appropriate sections where the work was performed and issued in the name of the contractor.

In the beginning when the amounts observed were higher than the amounts of the bill, the contractors discussed this [the Defendant]. She advised them that they wanted her to be paid by the contractors and that they were to take the difference between

(continued...)

---

<sup>2</sup>(...continued)
the amount she changed and pay it directly to her for her services.  She continued to instruct the contractors to pay the bills in this amount over this period of years.  These contractors worked directly for her and they had no contact with the Property Owners Association and were unaware that the Defendant was under a contract and being compensated for her services.

Over this period of years, it was determined that there was a loss through all of these sections of $136,692.98.  Eventually, one of the contractors contacted one of the sections and advised them of his concern about this method of payment.  Specifically, Section 16 lost $2,600; Section 18 lost $3,500; Section 20 lost $65,973.87; Section 21 lost $22,000 and Section 23 lost $37,816.60.

Your Honor, I discussed this downward departure negotiated plea with the various representatives of the sections and they understand the reason for the downward departure.  And everything stated occurred in Charlotte County, Florida.

THE COURT:  Do you take any exception or have any objection to the facts as summarized, Ms. Hanaoka?

MS. HANAOKA:  Your Honor, just a couple of matters.  Property Management Services was not a corporation, it was a business, it was not an incorporated business.

Also, however, the State indicated [the Defendant] individually, and we would assert that Property Management Services was the particular business that was conducting business with the Property Owners Associations.

MS. HARRINGTON:  The State would concur with that, your Honor.

THE COURT:  Okay.  Other than those minor exceptions that are not relevant to the State's ability to prove this case, and there being no exceptions or objections, I find that the facts which the State is prepared to prove are sufficient to constitute the crime of first degree grand theft.

Do you feel it's in your best interest and welfare to enter this plea and accept the sentence of this Court?

(continued...)

petitioner's participation in a business owned and operated by her and her husband. Pursuant to the terms of petitioner's plea arrangement, petitioner was sentenced to 10 years' probation and ordered to pay restitution in the approximate amount of $68,000.

Based on petitioner's criminal conviction, respondent determined in the notice of deficiency that petitioner failed to report $73,432 of "theft income" on her 1991 Federal income tax return. The record does not explain the basis for the difference between the deficiency amount respondent determined and the restitution amount required by petitioner's plea agreement. However, petitioner was afforded an opportunity to address this disparity, but she failed to do so.

Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). It is appropriate if the pleadings and other materials show that there is no genuine issue as to any material fact, and a decision may be rendered as a matter of law. Rule 121(b); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). The moving party bears the burden of proving that summary judgment is warranted. Celotex Corp. v. Catrett,

---

[2](...continued)
THE DEFENDANT:  Yes, Sir.

THE COURT:  Let the record show that I find this Defendant is alert and intelligent. * * *

477 U.S. 317, 323 (1986); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). In deciding a motion for summary judgment, the Court will construe factual inferences in a manner most favorable to the opposing party. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985).

The Supreme Court has held that gross income includes all clearly realized accessions to wealth over which a taxpayer has complete dominion. James v. United States, 366 U.S. 213, 219 (1961)(citing Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955)). A taxpayer has dominion and control over cash when he or she has the freedom to use it at will, even though that freedom may be assailable by persons with better title. Rutkin v. United States, 343 U.S. 130, 137 (1952). In Ianniello v. Commissioner, 98 T.C. 165 (1992), this Court stated that a taxpayer obtains possession, custody, and control of unlawfully acquired proceeds on the date he or she acquires such proceeds. Thus, a taxpayer who unlawfully acquires cash receives gross income in the taxable year that he or she unlawfully acquires the cash, even though he or she makes restitution in a later year.[3] James v. United States, supra at 219-220; Ianniello v. Commissioner, supra at 173. Stated simply, the dominion and

_____

[3]To be sure, a law-abiding taxpayer is treated no differently. That is, a taxpayer who lawfully acquires cash receives gross income in the taxable year that he or she lawfully acquires the cash, even though he or she makes restitution in a later year. Healy v. Commissioner, 345 U.S. 278 (1953); United States v. Lewis, 340 U.S. 590 (1951).

control test excludes consideration of what happens to income after it flows from a taxpayer's hands.  Ianniello v. Commissioner, supra.

In the instant case, it is evident that petitioner had dominion and control over the misappropriated funds.  As discussed above, the restitution provision contained in petitioner's plea agreement does not alter the consequence of this finding.  Accordingly, there remains no genuine issue as to any material fact with respect to whether such misappropriated funds should be included in petitioner's gross income for taxable year 1991.[4]

We turn now to the penalty determined by respondent pursuant to section 6662(a).  Section 6662(a) imposes an accuracy-related penalty in an amount equal to 20 percent of the underpayment of tax attributable to one or more of the items set forth in section 6662(b).  Respondent determined the section 6662(a) penalty on the grounds that petitioner's underpayment is a "substantial understatement."  See sec. 6662(b)(2).  The term "understatement" means the excess of the amount of tax required to be shown on a return over the amount of tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)).  Sec. 6662(d)(2)(A).  An understatement is a "substantial understatement" when the understatement exceeds the

---

[4]The deductibility of any restitution paid by petitioner is an issue not before us in the present proceeding.

greater of $5,000 or 10 percent of the amount of tax required to be shown on a return.  Sec. 6662(d)(1)(A).

The accuracy-related penalty under section 6662(b)(2) does not apply with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1).  It is clear from the undisputed facts that the reasonable cause exception under section 6664(c)(1) is not applicable in the instant case.  Accordingly, the penalty determined by respondent is sustained.

Respondent has established that this case presents no genuine issue as to any material fact and that she is entitled to summary judgment as a matter of law.  Accordingly, we shall grant respondent's motion for summary judgment to sustain the deficiency and penalty determined in the notice of deficiency.[5]

An order will be issued

and decision will be entered

for respondent.

---

[5]In her petition, petitioner sets forth two grounds for contesting the adjustments contained in the notice of deficiency. This opinion addresses the principal ground.  It can also be gleaned from the petition that petitioner is contesting the notice of deficiency on grounds that her husband should be jointly and severally liable for the deficiency because the couple filed a joint Federal income tax return for the year at issue.  Although respondent has determined that petitioner's husband qualifies for relief under sec. 6013(e), whether petitioner's husband is jointly and severally liable for the deficiency at issue has no bearing on whether petitioner herself is liable for such deficiency.